IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
U.S. Magistrate Judge S. Kato Crews

Civil Action No. 1:20-cv-03530-SKC

CHRISTOPHER B. HARKER,

        Plaintiff,

v.

W. NEYHART,

        Defendant.

---

**ORDER RE: MOTION TO DISMISS [#21]**

---

On October 22, 2020, Plaintiff Christopher Harker, a pretrial detainee in the custody of the Arapahoe County Sheriff's Office (Sheriff), and other inmates were singing together from their cells. [#10.][1] Defendant Neyhart was working as a guard at the time, and upon hearing the singing said loudly in the pod, "I knew you guys were gay." [*Id.* at p.4.][2] According to the Amended Complaint (hereinafter "Complaint"), Defendant directed this statement toward Mr. Harker's cell and, in doing so, exposed Harker's sexuality. [*Id.* at ¶7.] Following Defendant's statements, Harker was moved to a different pod because his cellmates began treating him differently by intimidating him and telling him to stay on his bunk. [*Id.*]

---

[1] The Court uses "[#__]" to refer to specific docket entries in CM/ECF.

[2] These facts are drawn from Plaintiff's Amended Complaint and are presumed true for the purpose of ruling on Defendant's Motion to Dismiss.

1

Following this incident, Harker filed a grievance regarding Defendant's behavior. [*Id.*] The Sheriff investigated the claims and determined Defendant did make the statement. [*Id.*] But the Sheriff concluded it had been made in a joking manner. [*Id.*] Following the grievance proceedings, Defendant refused to give Harker any toilet paper, and Harker was forced to use his own underwear to clean himself. [*Id.*]

Harker filed this case seeking monetary damages for violations of his constitutional rights. [*Id.* at p.6.][3] Defendant seeks dismissal and argues he is entitled to qualified immunity. [#21.] The Court has reviewed the Motion and related briefing, the Complaint, and the relevant law. No hearing is necessary. For the following reasons the Motion is GRANTED IN PART and DENIED IN PART.

## STANDARDS OF REVIEW

### A.    Failure to State a Claim

Under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a court may dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). In deciding a motion under Rule 12(b)(6), the Court must "accept as true all well-pleaded factual allegations . . . and view these allegations in

---

[3] Plaintiff proceeds *pro se*; thus, the Court liberally construes his pleadings. *See Haines v. Kerner*, 404 U.S. 519, 520-21 (1972). But the Court may not "supply additional factual allegations to round out a plaintiff's complaint." *Whitney v. State of New Mexico*, 113 F.3d 1170, 1173-74 (10th Cir. 1997). Nor may a plaintiff defeat a motion to dismiss by alluding to facts that have not been alleged, or by suggesting matters that were not pleaded. *Associated Gen. Contractors of Cal. Inc. v. Cal. State Council of Carpenters*, 459 U.S. 519, 526 (1983). *Pro se* plaintiffs must "follow the same rules of procedure that govern other litigants." *Nielsen v. Price*, 17 F.3d 1276, 1277 (10th Cir. 1994).

2

the light most favorable to the plaintiff." *Casanova*, 595 F.3d *v. Ulibarri*, 595 F.3d 1120, 1124-25 (10th Cir. 2010) (internal citations omitted). The Court is not, however, "bound to accept as true a legal conclusion couched as a factual allegation." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Id.* at 678 (internal quotation marks omitted).

The *Twombly/Iqbal* pleading standard requires courts take a two-prong approach to evaluating the sufficiency of a complaint. *Id.* at 678–79. The first prong requires the court to identify which allegations "are not entitled to the assumption of truth" because, for example, they state legal conclusions or merely recite the elements of a claim. *Id.* at 678. The second prong requires the court to assume the truth of the well-pleaded factual allegations "and then determine whether they plausibly give rise to an entitlement to relief." *Id.* at 679. "Accordingly, in examining a complaint under Rule 12(b)(6), [courts] will disregard conclusory statements and look only to whether the remaining, factual allegations plausibly suggest the defendant is liable." *Khalik v. United Air Lines*, 671 F.3d 1188, 1191 (10th Cir. 2012). The standard is a liberal one, however, and "a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and that recovery is very remote and unlikely." *Dias v. City & Cty. of Denver,* 567 F.3d 1169, 1178 (10th Cir. 2009).

### B. Qualified Immunity

Qualified immunity shields "government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quotation omitted). Qualified immunity is "immunity from suit rather than a mere defense to liability [and] it is effectively lost if a case is erroneously permitted to go to trial." *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985). Whether defendants are entitled to qualified immunity is a legal question. *Wilder v. Turner*, 490 F.3d 810, 813 (10th Cir. 2007).

When the qualified immunity defense is raised, the plaintiff bears the burden of showing, with particularity, facts and law establishing the inference that the defendant violated a clearly established federal constitutional or statutory right. *Walter v. Morton*, 33 F.3d 1240, 1242 (10th Cir. 1994). If the plaintiff fails to satisfy either prong, the defendant is entitled to qualified immunity. *Pearson*, 555 U.S. at 236. The court has the discretion to consider these prongs in any order. *Leverington v. City of Colorado Springs*, 643 F.3d 719, 732 (10th Cir. 2011).

## ANALYSIS

In his Complaint, Harker contends Defendant violated his constitutional rights when Defendant labeled him gay and, thereby, put his health and safety at risk. He also contends Defendant unlawfully retaliated against him for filing a grievance regarding the incident.

A.   **Eighth Amendment**[4]

"The Eighth Amendment's prohibition of cruel and unusual punishment imposes a duty on prison officials to provide humane conditions of confinement, including adequate food, clothing, shelter, sanitation, medical care, and reasonable safety from bodily harm." *Tafoya v. Salazar*, 516 F.3d 912, 916 (10th Cir. 2008) (citation omitted). This encompasses a duty "to protect prisoners from violence at the hands of other prisoners." *Farmer v. Brennan*, 511 U.S. 825, 833, (1994). "A prison official's deliberate indifference to a substantial risk of serious harm to an inmate violates the Eighth Amendment." *Id.* at 828.

A claim for deliberate indifference involves both an objective and a subjective component. *Mata v. Saiz*, 427 F.3d 745, 751 (10th Cir. 2005). "[T]o establish a cognizable Eighth Amendment claim for failure to protect, a plaintiff 'must show that he is incarcerated under conditions posing a substantial risk of serious harm,' the objective component, and that the prison official was deliberately indifferent to his safety, the subjective component." *Benefield v. McDowall*, 241 F.3d 1267 (10th Cir. 2001) (quoting Farmer, 511 U.S. at 834)). In his Motion, Defendant argues dismissal is warranted because his alleged statement, "I knew you guys were gay," was akin to

---

[4] Harker brings his claims pursuant to the Eighth Amendment. The Eighth Amendment, however, does not apply until after an adjudication of guilt. At the time in question, Harker was a pretrial detainee; therefore, his claim falls under the Fourteenth Amendment and the Court construes it accordingly. *See Dicino v. Garcia*, No. 12-CV-01274-WYD-KLM, 2014 WL 3746961, at *4 (D. Colo. July 30, 2014) ("[T]he Court regularly *sua sponte* construes the [Eighth Amendment] claims under the Fourteenth Amendment in cases brought by state-held pretrial detainees."). Nevertheless, the same analysis applies under either amendment. *Estate of Vallina v. Cty. of Teller Sheriff's Office*, 757 Fed. App'x 643, 646 (10th Cir. 2018).

name calling, which is not actionable under the constitution. The Court disagrees with Defendant's characterization of his statement as simple name calling.[5]

In *Benefield*, a prisoner plaintiff brought a claim under the Eighth Amendment arguing a guard put the plaintiff in physical danger at the hands of other inmates when he labeled the plaintiff a "snitch." 241 F.3d at 1269-70. The Tenth Circuit recognized that labeling a prisoner a snitch had the potential for great harm and could violate the constitution. *Id*. at 1271. "While a different incendiary badge of prison infamy was used here, the [Court believes the] same principles apply." *Brown v. Narvais*, 265 F. App'x 734 (10th Cir. 2008) (plaintiff established a serious risk of bodily injury where a guard labeled plaintiff a "pedophile" thus placing him in a class of inmates subject to serious bodily harm); *see also Moore v. Mann*, 823 F. App'x 92, 96 (3d Cir. 2020) (finding "a genuine dispute regarding whether the defendants were deliberately indifferent to the risk of telling other inmates that [plaintiff] was gay, a pedophile, or a snitch"); *Thomas v. District of Columbia*, 887 F. Supp. 1, 4 (D.D.C. 1995) ("In the prison context . . . one can think of few acts that could be more likely to lead to physical injury than spreading rumors of homosexuality. . . .").

To be sure, Congress, in enacting the Prison Rape Elimination Act (PREA), recognized an inmate's sexuality (or the perception of their sexuality) could put them at risk for being sexually abused by other inmates. 28 C.F.R. § 115.241(d)(7). And both the Colorado Department of Corrections and the Arapahoe County Sheriff have

---

[5] Any conclusion this statement was made in a joking manner is a question of fact and would require testimony, other evidence, and credibility determinations. These considerations are not appropriate in evaluating a motion to dismiss.

acknowledged the PREA's application to "all federal, state, and local prisons, jails, police lock-ups, private facilities, and community settings such as residential facilities."[6] For these reasons, labeling an inmate as gay is no joke in the lock-up environment, as Defendant suggests. Like a prison guard tagging an inmate as a snitch or a pedophile, labeling an inmate as gay could indeed raise a serious risk of harm.[7]

Nevertheless, the Court finds Harker's allegations fail to establish the subjective prong of the Eighth Amendment analysis. First, the Complaint fails to plausibly allege Defendant's comment singled Harker out such that Defendant was deliberately indifferent to Harker's safety. Specifically, although the Complaint alleges Defendant's statement was "directed at" Harker's cell, it alleges the statement was made generally in the pod where Harker's cell was located. Further, the alleged statement itself was, "I knew *you guys* were gay" (emphasis added). Because the statement referred to multiple individuals and was shouted in a common area, the

---

[6] *See* Colorado Department of Corrections, https://cdoc.colorado.gov/about/prea (last visited 8/27/2021); Arapahoe County Sheriff's Office https://www.arapahoegov.com/1376/Prison-Rape-Elimination-Act-PREA (last visited 8/27/2021).

[7] Defendant also argues his alleged statements could not have put Harker at a greater risk of assault because there are no allegations Harker was ever assaulted. [#21 at p.6.] But the Tenth Circuit has stated "the absence of an attack caused by the disclosure raise[s] questions as to the appropriate available remedy, but [does] not affect the legal sufficiency of the constitutional claim pled, as 'a violation of the Eighth Amendment does not turn on the type [of] relief sought.'" *Brown*, 265 F. App'x at 736 (quoting *Benefield*, 241 F.3d at 1272).

Complaint fails to plausibly allege Defendant knew he was specifically exposing Harker's sexuality.

Similarly, there are no factual allegations in the Complaint to plausibly allege Defendant's subjective knowledge of any risks associated with being known as gay in prison, or in generally referring to a group of male inmates as gay. Because the allegations fail to establish the subjective component of an Eighth Amendment claim, Plaintiff has not met his burden with respect to the first prong of the qualified immunity analysis. Defendant, therefore, is entitled to qualified immunity and the Court must dismiss this claim.

**B.    First Amendment**

While Harker's Complaint nominally asserts one claim under the Eighth Amendment, the Court is not bound by a *pro se* litigant's labels. *See Castro v. United States*, 540 U.S. 375, 381 (2003) (it is appropriate for federal courts to ignore the legal labels attached to a *pro se* party's claims "to create a better correspondence between the substance of [the party's claims] and [the] underlying legal basis"). And in keeping with this Court's duty to liberally construe a *pro se* litigant's pleadings, "if the court can reasonably read the pleadings to state a claim on which the plaintiff could prevail, it should do so despite the plaintiff's failure to cite proper authority, his confusion of legal theories, his poor syntax and sentence construction, or his unfamiliarity with pleading requirements." *Haines*, 404 U.S. at 520-21.

Harker alleges after he filed a grievance regarding Defendant's conduct (which was investigated and substantiated), Defendant retaliated against him by denying

him toilet paper and forcing him to use his own clothing to clean himself. Despite not being separately titled, the Court construes these allegations as alleging a claim of First Amendment retaliation.

"It is well-settled that prison officials may not retaliate against or harass an inmate because of the inmate's exercise of his right of access to the courts." *Requena v. Roberts*, 893 F.3d 1195, 1211 (10th Cir. 2018). "[T]he elements necessary for a retaliation claim where the governmental defendant is not the plaintiff's employer nor a party to a contract with the plaintiff" are: (1) the plaintiff was engaged in constitutionally protected activity; (2) the defendant's actions caused the plaintiff to suffer an injury that would chill a person of ordinary firmness from continuing to engage in that activity; and (3) the defendant's adverse action was substantially motivated as a response to the plaintiff's exercise of constitutionally protected conduct. *See Worrell v. Henry*, 219 F.3d 1197, 1212 (10th Cir. 2000). "[W]hen the plaintiff alleges that the defendant's action was taken in retaliation for protected speech, our standard for evaluating that chilling effect on speech is objective, rather than subjective." *Eaton v. Meneley*, 379 F.3d 949, 954–55 (10th Cir. 2004) (internal quotation omitted).

Defendant did not address Harker's retaliation allegations, which alone warrants allowing this claim to proceed. But even so, the Court concludes the allegations plausibly state a claim of retaliation. There is no question Harker's conduct of filing a grievance (and now this lawsuit) is protected under the First Amendment. *Gee v. Pacheco*, 627 F.3d 1178, 1189 (10th Cir. 2010) (filing grievances

9

is a constitutionally protected activity); *Green v. Johnson*, 977 F.2d 1383, 1389-91 (10th Cir. 1992) (inmate's allegation that guards destroyed his legal materials in retaliation for filing lawsuits and grievances stated a cognizable First Amendment claim). And the Court concludes denying an inmate toilet paper and forcing him to use his own clothing instead is an injury that would chill a person of ordinary firmness from filing further grievances. *See West v. Mitchell*, No. 1:18 CV 2694, 2019 WL 1367076, at *4 (N.D. Ohio Mar. 25, 2019) (plaintiff alleged facts sufficient to support plausible retaliation claims against the defendant who repeatedly denied him toilet paper); *Curry v. Morring*, No. C 09-3751 MHP, 2010 WL 3490238, at *2 (N.D. Cal. Sept. 2, 2010) (defendant could have liability for retaliation based on the allegedly retaliatory denial of toilet paper).

With respect to the causal connection between Harker's protected conduct and the alleged retaliation, "[a] plaintiff can assert a claim for First Amendment retaliation by 'showing that the protected activity was close in time to the adverse action.'" *Tonjes v. Park Cty. Sheriff's Off.*, 300 F. Supp. 3d 1308 (D. Colo. 2018) (quoting *Colvin v. State Univ. Coll. at Farmingdale*, No. 13–cv–3595 (SJF)(ARL), 2014 WL 2863224, at *20 (E.D.N.Y. Jun. 19, 2014)). In this case, Harker alleges the Sheriff investigated Defendant's conduct in labeling Harker as gay; therefore, it is reasonable to infer from the allegations in the Complaint that Defendant was aware of the grievance, particularly since the Complaint also alleges the grievance was found partially meritorious. And according to the Complaint, the denial of toilet paper began within the weeks following the conclusion of the investigation. Based on the

10

foregoing, the Court concludes Harker has plausibly stated a § 1983 claim against Defendant for violation of the First Amendment.

\*   \*   \*

For the foregoing reasons, the Court GRANTS IN PART and DENIES IN PART the Motion to Dismiss. Plaintiff's Eighth Amendment claim is dismissed, without prejudice, and his First Amendment retaliation claim shall proceed to discovery.

DATED: August 31, 2021.

BY THE COURT:

S. Kato Crews
United States Magistrate Judge